EIEBD, P.,
delivered the opinion of the court:
The appellants, who are judgment creditors of George W. Harrison, filed their bill in the Circuit Superior Court of Baw and Chancery of Nottoway county against George W. Harrison and others, the object of which was to set aside, as fraudulent, a deed of the 4th of September, 1841, from John Bland to William R. Bland, trustee, for the benefit of Margaret Emma Harrison, wife of George W. Harrison and her children, and to subject the property (certain slaves therein mentioned) *to sale to satisfy their judgments; and as the property had been removed by Harrison from the State of Virginia, the bill contained a prayer, to the effect, that if the said slaves should not be forthcoming to satisfy the decree, that John Bland, who had executed the deed of trust before referred to, and Henry C. Worsham, (who, the plaintiffs alleged, made a fraudulent purchase of Harrison of two of the slaves, Martha and William,.mentioned in the deed of trust above referred to,) might be decreed to pay the value of the said slaves and their profits, according to their respective liabilities. The defendants, Worsham and John Bland, filed their several informal demurrers and answers to the bill. William R. Bland filed his answer, and sundry depositions W'ere taken and filed. And, on hearing the cause, the court directed the following issues to be tried by a jury, to wit:
“1st. Whether the plaintiff, T. B. Bond, surviving partner of T. B. Bond & Co., and the plaintiff, Robert B. Bolling, executor of Robert Bolling, deceased, lost their debts due from George W. Harrison, mentioned in the bill, or either of them, or any portion of either of them, by reason of the defendant, John Bland’s execution of the deed of trust to William R. Bland, for the benefit of the wife and children of Harrison, or by any other fraudulent act of said Bland, in relation to the property of the said Harrison, and, if so, to what extent.”
‘ ‘2d. Whether the judgment acknowledged by George W. Harrison, in favor of the defendant Henry C. Worsham, on the 26th January, 1843, in the proceedings mentioned, was fraudulent or not as to the creditors of the said George W. Harrison.”
The appeal in this case has been taken by Bolling’s executor and Bond from this interlocutory decree.
*836 I will, in the first place, consider this case at is respects the appellee Worsham and the interest of Mrs. Harrison and her children, in Martha and William, *under the deed from Worsham to William R. Bland for their benefit.
Bond’s judgment against Harrison was recovered on the 26th of November, 1841, a fi. fa. issued on the 13th December, 1841, on which the sergeant of the corporation of Petersburg made a return of “no effects” to March rules, 1842.
Bolling’s judgment was recovered 26th January, 1843, a ca. sa. issued 18th April, 1843, which was executed on Harrison, who took the oath of insolvency surrendering nothing, on the 1st of June, 1843, and was discharged from custody.
On the same 26th day of January, 1843, Worsham recovered his judgment by confession against Harrison for $1,259 04, with interest and costs. Upon this judgment an execution was issued on the same day, placed in the hands of the proper officer and returned by him “satisfied” by, the directions of the plaintiff given in writing on the 4th February, 1843. The fi. fa. on Bond’s judgment having long before this time been issued and returned, and the ca. sa. on Bolling’s judgment not having been issued and executed until afterwards, the lien acquired by Worsham on Harrison’s personal property by virtue of his fi. fa. was paramount to any that could be asserted by either Bond or Bolling’s executor. And Worsham could, therefore, by purchase acquire a valid title to the property under Harrison. His fi. fa. was not levied oh the property; because, as is said by Wor-sham in his answer, the full amount of the execution was paid to him by Harrison on the 27th January, 1843, by a sale of property, part of which consisted of the two negroes Martha and William, before mentioned.
The appellants seek, in their bill, to impeach this judgment on the ground of fraud, and charge that Worsham did not pay value for Martha and William, but assumed to be the owner thereof and combined with Harrison to defraud his creditors. These allegations *in the bill are denied by Worsham, and not only not sustained by proof, but it is satisfactorily shewn that Worsham’s claim on Harrison for which the judgment was confessed was a just debt, and Worsham should be regarded as a bona fide purchaser of the property, received by him in satisfaction of his execution against Harrison; and, consequently, his deed of the 4th February, 1843, to John R. Bland, coveying Martha and William to him in trust for the benefit of Mrs. Harrison and her children should be held good and valid against the claims of the appellants; and the bill as to Wor-sham, so far as it sought to subject Martha and William to sale to satisfy the plaintiff’s judgments, should have been dismissed.
In relation to John Bland, the material facts- appear to be as follows: On the 4th day of September, 1841, whilst Bond’s suit was pending, and before judgment, John-Bland executed the deed in question, conveying to William R. Bland, “in consideration of natural love and affection towards Margaret E. Harrison and of the further sum of ten dollars to be paid to John Bland by William R. Bland, six negro slaves, then in the territory of Florida, to wit, Martha and her children Edmund, Solomon, Ritter and William, and a mulatto girl Eliza, for the use and benefit of Mrs. Harrison for life, remainder after her death to her children.” These negroes belonged at the time to George W. Harrison, and were then in-the territory of Florida. But he intended shortly to bring them to Nottoway county, in Virginia, and being deeply involved in-debt, he apprehended thej’ would be taken, on their arrival in Virginia, bj the sheriff, to satisfy some execution that might be issued against his goods and chattels. To-place these negroes in such condition that they could be taken in execution, when brought to Virginia, was the object, intent and purpose of the deed, and although, as, I believe, the fact was that Bland was misled and deceived by the misrepresentations of Harrison as to the true state of his affairs, and was innocent of any fraudulent purpose *of cheating creditors out of their debts; nevertheless that deed must be regarded as having been executed for the purpose of defrauding creditors, and is, therefore, null and void.
But these negroes were never in the possession of John Bland, or under his control. The title to them had never been transferred to him by writing or otherwise. He did not, at any time, exercise any act of ownership over the negroes before making the said deed or afterwards, nor had he, at any time, a right to hold or claim the possession thereof. The only thing he did was the making of the deed of the 4th of September, 1841, which was, when made, wholly inoperative, and passed no sort of title whatever to the trustee. That trustee did not sign the deed, nor had he, in any way, undertaken to execute its provisions. I am willing to admit, that if John Bland had acquired any title to the property under Harrison, and had had the possession or control of the property, and had then made the deed in question, he ought to be, and would be held responsible to the appellants for the full value of all the negroes. I say all, because I mean to embrace the value of Martha and William, who had been purchased for value by Worsham of Harrison, and b3T a good and valid deed had been con-ve3red by Worsham to William R. Bland, for the benefit of Mrs. Harrison and her children. This position is sustained by the case of Williamson’s ex’or v. Goodwyn, 9 Grat. 503, and other cases that might be cited to the same effect. Under those circumstances, John Bland would be regarded as a trustee, having the title and control of the propert3 under Harrison, the debtor, and would be bound, as trustee, to hold and dispose of the property for the benefit of Harrison’s creditors, in like manner as if *837 •the same had been conveyed to him by deed of trust, for the purpose duly executed and recorded, and he would be liable to each creditor for his share of the trust subject, according to the amount thereof, and priority of the claim. It is on this principle, as I understand it, *that fraudulent donees of property are held to account with creditors for its value in a •court of equity.
But does it apply to a case in which a party to the fraudulent arrangement, as in the case of John Bland, has never had title to, or the possession or control of, the debtor’s property, and in which the relation of trustee and cestui que trust cannot be held to exist between the fraudulent actor and the creditors of the debtor? I think it may be said, without qualification, that the rule applies to no such case. The counsel, who argued this cause on behalf of the appellants, is a gentleman of no ordinary share of learning, astuteness and industry, and, after all, he has produced but one case to show that a fraudulent actor, under such circumstances, should be held responsible for the value of the property — that is the case of Hughes v. Bloomer, 9 Paige, 269. On looking into that case, it will be found that the only question that arose, and was decided, was a question of pleading. One of the defendants had united with two others in filing a joint answer, in which an admission had been made by the defendants that was untrue, in point of fact, as to one of the respondents, and greatly to his injury. He asked leave to file a supplemental answer, contradicting and explaining the admission, so as to take testimony to show how the fact was. The leave was given by the Vice Chancellor, and Chancellor Walworth, in delivering his opinion upon the appeal, expressed a sentiment, arguendo, which may seem to favor the inferences of the appellant’s counsel; but even if the conclusion of that counsel be conceded to be a fair and legitimate inference from the chancellor’s opinion, nevertheless, it cannot be regarded as a judicial decision in that case.
I am not inclined to come to the same •conclusion, but, on the contrary, think the •opinion of the chancellor, so far as it may be supposed to have any bearing on the question before us, is rather in support of the view I have above taken, than other•wise. Bloomer, the debtor, had made a fraudulent transfer of his property *to Moon, who assigned to Hegeman and Birkbeck, and, on the question of allowing Birkbeck to file a supplemental answer, the chancellor said, “if Birkbeck was ignorant of the assignment to Moon, and only supposed he was accepting an assignment of the property, which originally belonged to the latter, for the benefit of his creditors, he may not be liable for the property of Bloomer, which never was, in fact, in the possession of or under the control of Moon, provided the respondent never had exercised any ownership or control over that property, nor authorized any other per- I son to do so for him.” My construction of the Chancellor’s opinion is, that although he thought Birkbeck might not, under the circumstances, be responsible for the property, of which Moon had not had the possession or control, yet, as that property had been assigned to Birkbeck, he might be held responsible for it if he had exercised ownership or control over the property. Proceeding in his opinion, the chancellor says, “on the other hand, if the respondent has allowed his name to be used for the purpose of defrauding the creditors of Bloomer, and has accepted an assignment from Moon, containing a transfer of the legal title to property, which had been fraudulently assigned to the latter, the fact that the respondent had not actually used the property himself, but has merely suffered it to be used or squandered by his co-assignee, or Bloomer or Moon, will not protect him from liability to account for its value to the creditors of Bloomer.” This part of the Chancellor’s opinion is predicated upon a state of circumstances, which, if they had existed in J. Bland’s case, would have placed him in the condition of a trustee, and made him liable to Harrison’s creditors for the value of the property, although he never had used the property himself, but only suffered it to be carried by Harrison, as he did, to some Western State beyond the jurisdiction of the courts of Virginia.
Taking this view of the case, I am of opinion, that the bill, as to John Bland, should have been dismissed also.
*What may be the liability of John Bland to the creditors of Harrison, who have been actually injured by the execution of the deed, in an action at law to recover damages sustained in consequence thereof, is a question for the legal forum in which suit may be brought, and the question submitted for its consideration and judgment.
As to the trustee William R. Bland, he has never executed the deed, nor accepted the trust, and has had nothing to do with the property. It has been removed by Harrison beyond the jurisdiction of this court, but the trustee and the wife and children of Harrison are all before the court. The deed should have been declared to be null and void as' to the creditors of Harrison, and set aside as to them.
I I am, therefore, of opinion, that the decree of the circuit court should be reversed, with costs to the appellees, Worsham and John Bland, the parties substantially prevailing, and the bill dismissed also, so far as it concerns the purchase made by Wor-sham of Harrison of the slaves Martha and William, and the deed from Worsham to William R. Bland, for the benefit of Mrs. Harrison and her children. That the deed from John Bland to William R. Bland, of the 4th September, 1841, should be declared to be null and void, and set aside as to the plaintiffs. That the parties respectively should pay their own costs in the circuit ! court.
*838 DECREE.
This day came the parties by their counsel, and the court having maturely considered the transcript of the record, the decree aforesaid, and the arguments of counsel, is of opinion that the said decree is erroneous, because the defendants Henry C. Worsham and John Bland ought not to be held responsible to the appellants for the value of the property mentioned in the deed of the 4th.of September, 1841, from John Bland to William R. Bland, in the proceedings mentioned, or for any part thereof, whether the said property should *be forthcoming or not to answer the appellant’s claims. Therefore it is decreed and ordered, that the said decree be reversed and annulled, and that the appellant,, who is an executor, out of the estate of his testator in his hands to be administered, arid the other appellant, in his own right, do pay unto the appellees Henry C. Worsham and John Bland, the parties substantially prevailing, their costs about their defence in this behalf expended; and this court proceeding to pronounce such decree as the said circuit superior court ought to have pronounced, it is further decreed and ordered, that the bill, as to the defendants Henry C. Worsham and John Bland, and as to so much thereof as relates to the slaves Martha and William, purchased by Henry C. Wor-sham of George W. Harrison, and conveyed by said Worsham to William R. Bland by deed of the 4th day of February, 1843, for the benefit of the defendant, Margaret Emma Harrison, and her children, be dismissed ; and it is further decreed and ordered, that the deed of the 4th day of September, 1841, from John Bland to William R. Bland, for the benefit of the said Margaret E. Harrison, in the bill and proceedings mentioned, be set aside as to the appellants, the court being of opinion that the said deed, as to them, is fraudulent and void; and it is further decreed and ordered, that the parties respectively pay their own costs by them expended in the said circuit superior court.

Fraudulent Conveyances. — See monographic note on “Fraudulent and Voluntary Conveyances" appended to Cochran v. Paris, 11 Gratt, 348.