BERNARD F. GATELY, trustee, *vs.* SARAH KAPPLER.
SAME *vs.* SAME.

Middlesex.　　March 22, 1911. — June 22, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Equity Jurisdiction,* To set aside conveyance fraudulent as against creditors. *Fraud. Husband and Wife.*

A conveyance and transfer of property by a husband through an intermediary to his wife is not shown to be in fraud of subsequent creditors simply by proof that the conveyance and transfer were made with a design to settle the property upon the wife so that it should not be exposed to the hazards of the husband's future business or liable for any future debts that he might contract. It is necessary to go further and to show that at the time of the conveyance the husband had an actual intent to contract debts and a purpose to avoid by the conveyance and transfer the payment of them. In a suit in equity by the trustee in bankruptcy of the estate of a husband against the wife of the bankrupt to set aside a conveyance and transfer, such a fraudulent purpose here was shown on the part of the husband of which the wife was cognizant and in which she participated.

In a suit in equity by the trustee in bankruptcy of the estate of a husband against the wife of the bankrupt to set aside conveyances of real and personal property from the husband through an intermediary to his wife on the ground that they

were fraudulent as against future creditors, there was evidence which fully warranted, if it did not require, the general finding, which was made by a master, that the conveyances were in fraud of future creditors, and no special finding was made by the master which was inconsistent with this general finding. The master also found, on evidence not reported by him, that the defendant was fully cognizant of this fraudulent intent of her husband "and participated therein, and accepted the said conveyances with knowledge that they were made to hinder, delay and defraud his future creditors." *Held,* that, as both the grantor and the grantee participated in the fraud, the conveyances, whether voluntary or for a valuable consideration, were void as to creditors, and it therefore was unnecessary to consider what, if any, equitable interest the wife had in the real estate before the conveyances, because she could take nothing by the conveyances and must be relegated to such rights as she had before they were made.

HAMMOND, J. These are two bills in equity brought by the trustee in bankruptcy of the individual and partnership estates of William T. True and Charles F. Kappler, to set aside as fraudulent certain conveyances made by the latter through an intermediary to the defendant, his wife, the first suit relating solely to real estate and the second solely to personal property. Each is before us upon the plaintiff's appeals from the order sustaining certain exceptions to the master's report, from the findings of the judge of the Superior Court and the order for a decree, and from the final decree dismissing the bill with costs.[*]

1. As to the first case. While the master has found that at the time of the conveyance of the real estate in June, 1906, there was no intention on the part of Charles F. Kappler or the defendant to hinder, delay or defraud his then existing creditors, he has made a different finding as to his future creditors. As to the latter his finding is that these conveyances from Kappler through Miss Hutchins to the defendant "were made by him with intent to hinder, delay and defraud his future creditors." This finding must stand unless shown to be wrong or inconsistent with some other finding by the master.

It is strongly insisted that the finding is not warranted by the subsidiary findings.

It is doubtless true, as contended by the defendant, that a finding of fraud as to subsequent creditors would not be warranted by the simple proof that the transfer was made with a design to settle the property upon the defendant so that it should

---

[*] The master was Frederic A. Fisher, Esquire. The findings, orders and decrees were made by *Harris,* J.

not be exposed to the hazards of his future business or liable for any future debts which he might contract. *Winchester* v. *Charter*, 12 Allen, 606, 611. *Mowry* v. *Reed*, 187 Mass. 174, 177, and cases cited. It must further appear that at the time of the conveyance he had an actual intent to contract debts and a purpose to avoid by the conveyance the payment of them. *Stratton* v. *Edwards*, 174 Mass. 374, 378, and cases cited. *Winchester* v. *Charter*, *ubi supra.*

Some of the subsidiary findings are stated by the master as follows: " Upon all the evidence I find that on June 1, 1906, when Mr. Kappler conveyed all his real estate to the defendant as aforesaid, he knew or had good reason to believe and did believe that the contracts for building the houses in Hudson had already been awarded or would be awarded to the firm of True and Kappler; that the business of the firm would be conducted to a considerable extent on credit; that Mr. True did not stand in good credit with the lumber dealers in Lowell and was of little financial responsibility ; and that any credit which might then or thereafter be extended to the firm by those with whom they had business dealings would in all probability be given upon the strength of his (Kappler's) being a member thereof. I further find that he intended that the Burnham and Davis Lumber Company and the Davis and Sargent Lumber Company should, and expected they would, extend credit to a considerable amount to the firm upon the strength of his representations made as hereinbefore set forth as to his financial ability, and in reliance upon their knowledge of and reasonable belief as to his ownership of property and financial standing from former dealings with him; that he intended that credit should, and expected that it would be given the firm by those with whom they had dealings upon the strength of his supposed ownership of property, and more particularly of real estate ; that he intended and expected to contract debts as a member of the firm which he had good reason to believe in consequence of his conveyances of real estate to the defendant he might be unable to pay ; and that in making said conveyances to the defendant he intended to put all his real estate out of the reach of his future creditors."

The master further found as follows: " At some time during the latter part of February or early in March, 1906, Mr. Kappler

met Mr. Abbott on the street in Lowell.   There was evidence
and I find that in substance the following conversation ensued,
Mr. Abbott stated that his company did not care to extend any
further credit to the True Company unless Mr. Kappler would go
good for the bills.   Mr. Kappler then said he would never go
good for another dollar of the True Company, that he had already
formed or intended to form a copartnership with Mr. True to
date from March 1, 1906, and take over the business of the True
Company, that he was to do the buying, pay the bills, and keep
True ' on the jobs,' that he, Kappler, had always been and was
at that time ' good,' that the bills would be paid and he was the
one to pay them for he had the ' stuff ' to pay with.   It also ap-
peared that in answer to the direct question of Mr. Kappler
whether or not Mr. Abbott would be willing to trust him, the
latter replied in so many words that he would be glad to do so
for he knew that he, Kappler, had property.   Subsequently,
about the middle of March, 1906, Mr. Kappler met on the street
in Lowell Richard W. Jewett who had general oversight of the
books and outside collecting of the Burnham and Davis Lumber
Company, and who had also known Mr. Kappler for about fifteen
years.   There was evidence and I find that in substance the fol-
lowing conversation ensued.   Mr. Jewett stated that the manag-
ing officials of the Burnham and Davis Lumber Company had
been expecting Mr. True and Mr. Kappler to call at their office,
that they wished to find out when the copartnership began.   Mr.
Kappler said it began on March 1, and on being questioned by
Mr. Jewett as to the part he, Kappler, was to take in the busi-
ness of the firm, Mr. Kappler stated that he was going to do all
the ' ordering,' all the paying of bills and general ' outside hus-
tling,' and keep True ' on the job.'   In reply to a direct question
whether he would be responsible for lumber ordered by Mr.
True, Kappler said ' Yes, to a limited amount.'   During this
interview Mr. Kappler stated that he — meaning himself — was
' good ' and had the ' stuff ' to pay with, and further that the
firm had some small contracts or jobs on hand but none of
any importance."

Other findings by the master are as follows : " Between the
time of his first trip to Hudson on or about May 20 and June 1,
1906, Mr. Kappler called at the office of the Davis and Sargent

Lumber Company, a corporation for many years engaged in the lumber business in Lowell, where he met Frederick S. Conant, a salesman. There was evidence and I find that Mr. Kappler then said in substance to Mr. Conant that he was figuring on contracts for the construction of twenty houses in Hudson, Massachusetts, and inquired if the Davis and Sargent Lumber Company would like to submit prices for lumber. Mr. Conant then stated that the company would give no credit at all to Mr. True if he was to have anything to do with the matter, that he recognized Mr. Kappler as a former customer of the Howe Lumber Company with which Mr. Conant was previously connected, and that he recalled the fact that Mr. Kappler was 'perfectly good' then and was given credit. Mr. Kappler replied in substance that he was still 'perfectly good.' During this conversation Mr. Conant asked Mr. Kappler who was going to pay the bills for the lumber for which he was seeking prices, and Mr. Kappler replied that he would look out and pay the bills himself. At the close of this interview he was informed by Mr. Conant that he would be very glad to let him have all the lumber he wanted."

He further finds that "Although the firm of True and Kappler was formed some time in March, 1906, it did not appear upon the evidence that they actually commenced any building operations or incurred any liabilities prior to making the contract for the construction of the O'Neil houses in Hudson," and he also finds that "The debts of the firm of True and Kappler, all of which were incurred subsequent to June 1, 1906, amounted on April 8, 1907, the date of the adjudication in bankruptcy, to about $13,000, and the individual indebtedness of Mr. Kappler to about $1,245. The Burnham and Davis Lumber Company was a creditor of the firm of True and Kappler at the time of the adjudication in bankruptcy in the sum of $2,669, being the balance for lumber and building materials sold and delivered to the firm after June 1, 1906, and the Davis and Sargent Lumber Company was a creditor of said firm at the same time for lumber and building materials sold and delivered after June 1, 1906, for use in the construction of the O'Neil houses to the amount of $5,200. I find that the managing officials of these two lumber companies gave credit to the firm of True and Kappler in reliance upon the statements made to them by Mr. Kappler, as hereinbefore set

forth, in February or March, 1906, and also in reliance upon their knowledge of and reasonable belief as to his ownership of property and financial standing derived from their previous dealings with him and upon their belief that there had been no material change in his holdings of property or in his financial condition. There was direct evidence that Mr. Abbott, the president of the Burnham and Davis Lumber Company, had no actual knowledge of the said conveyances of real estate from Mr. Kappler to the defendant until some time in September, 1906, after all the indebtedness of the firm to his company had been incurred. I also find that credit was given by each of these two lumber companies without any actual knowledge on the part of their managing officials of the said conveyances of real estate from Mr. Kappler to the defendant, nor was there evidence that any of the creditors had notice of such conveyances other than the constructive notice resulting from the recording of the deeds."

These various findings, taken in connection with the undisputed facts, fully warrant, if they do not require, the general finding that these conveyances were in fraud of future creditors. Nor is it inconsistent with any special finding made by the master.

The master has found that the defendant was fully cognizant of this fraudulent intent of her husband "and participated therein and accepted the said conveyances with knowledge that they were made to hinder, delay and defraud his future creditors." The evidence upon which the master reached this conclusion is not before us, and therefore the finding must stand.

Both grantor and grantee having participated in the fraud, the conveyances, whether voluntary or for valuable consideration, were void as to creditors. *Wadsworth* v. *Williams*, 100 Mass. 126. See also *Bancroft* v. *Curtis*, 108 Mass. 47, 49. It therefore becomes unnecessary to consider what, if any, equitable interest the wife had in the land before the conveyances. She can take nothing by the conveyances but must be relegated to such rights as she had before.

Of the eleven exceptions filed by the defendant to the master's report the fifth, seventh, eighth and ninth are overruled by the Superior Court as being based wholly or in part upon evidence

not reported, and, no appeal having been taken by the defendant, they are not before us; the first and second are overruled because they have become immaterial, and the third, fourth, sixth, tenth and eleventh, for reasons hereinbefore stated. The final decree is reversed. The exceptions to the master's report are overruled and the report is confirmed. There is to be a decree for the plaintiff declaring the conveyances void in accordance with this opinion.

In the second case, for similar reasons the same course should be taken with reference to the defendant's exceptions to the master's report, and the report itself and the final decree. There should be a decree for the plaintiff declaring the conveyance void in accordance with this opinion. In each case it is

*So ordered.*

*J. F. Owens,* (*M. G. Rogers* with him,) for the plaintiff.

*S. S. Taft,* (*J. P. Farley & E. J. Tierney* with him,) for the defendant.