R. E. McDonald Company & others *vs.* Joseph A. Finko-
vitch & others.

Suffolk.    November 26, 1929. — February 8, 1930.

Present: Rugg, C.J., Crosby, Carroll, Sanderson, & Field, JJ.

*Fraud. Equity Jurisdiction,* To set aside conveyance in fraud of credi-
tors, To relieve from results of fraud. *Equity Pleading and Practice,*
Decree: after rescript. *Interest.*

A suit in equity by creditors of an insolvent shoe dealer, to reach and
apply to the satisfaction of the plaintiffs' claims property of the
dealer alleged to have been conveyed in fraud of his creditors to the
defendants, a corporation and two brothers representing it, was heard
by a judge upon evidence that the defendant corporation also was a
creditor of the dealer; that the dealer notified some of his creditors
that he was unable to meet his obligations; that, the defendant cor-
poration having received such notice, one of the brothers had a con-
ference with the dealer as to the quickest way for him to liquidate,
at which it was agreed between them that the dealer should turn over
to the brother all his assets, including merchandise and accounts
receivable, that the brother would settle the dealer's debts to the
defendant corporation and to two other creditors whom the brother
represented, that the brother then would obtain an extension from
the other creditors by paying them a certain percentage of their
claims, leaving the dealer to pay them the balances due them at the
end of the period of extension, and that the brother would extend to
the dealer further credit to enable him to pay such balances; that
shoes of the dealer accordingly were shipped to the defendant cor-
poration and his accounts receivable assigned to the brother; that the
second brother, at the suggestion of the first, procured said extensions
of time from the creditors; that the shoes so shipped were appro-
priated to the accounts of the defendant corporation and of the other
two creditors whom the first brother represented; that he did nothing
to settle the claims of any other creditors; and that he later denied
to the other creditors that he had received any property from the
dealer or that he was to pay anything to the creditors because of any
agreement with the dealer. The judge found that the first brother
never intended to settle with any of the creditors for the dealer except
with the defendant corporation and the other two whom he repre-
sented; that he obtained the dealer's property by agreeing to do
something which he did not intend to do; that the transfers of the
property were made in fraud of creditors and with intent to hinder,
delay and defraud them; and that the dealer must be presumed to
have intended the natural consequences of his acts, one of which

was that the creditors granted extensions after the dealer had authorized the first brother to negotiate with them. A decree was entered by order of the judge directing the defendants to pay the claims of certain of the plaintiffs whose claims were established, which was less than the value of the property fraudulently conveyed, with interest to the date of the decree. Upon appeal, it was *held*, that

(1) The evidence warranted a finding that the transfers of the dealer's property were fraudulent both in law and in fact;

(2) They therefore were invalid as to the plaintiffs irrespective of the nature or amount of consideration for them;

(3) As against the plaintiffs, the defendant corporation and the first brother, having obtained the property with actual fraudulent intent, were not entitled to retain any part thereof or to be credited with payments therefrom;

(4) Since the suit was solely for the purpose of reaching and applying the property transferred, it must be dismissed as to the second brother, he not at any time having had possession of or title to any of the property, notwithstanding the fact that he participated in the transaction to some extent;

(5) Interest on the amounts due the plaintiffs should be computed to the date of the decree to be entered after rescript;

(6) As so modified, the decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on September 4, 1923, having been commenced by a common law writ dated August 3, 1923.

The suit was heard by *Cox*, J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). The bill and material evidence are described in the opinion. The judge found that the shoes turned over by Fox to the defendant M. Finkovitch, Inc. "have been appropriated to the accounts of M. Finkovitch, Inc., I. Cohen and Cohen & Weinstein." Other material findings are stated in the opinion. By order of the judge a final decree was entered on February 9, 1929, dismissing the bill as to certain of the plaintiffs and ordering the defendants to pay certain sums to four of the plaintiffs with interest to the date of the decree. The defendants appealed.

*H. A. Mintz & G. S. Alberts*, for the defendants.

*Lee M. Friedman*, for the plaintiffs.

SANDERSON, J. This is a bill in equity filed by creditors and an assignee of Clifford C. Fox, formerly of St. Louis, Missouri, against M. Finkovitch, Inc., Joseph A. Finkovitch and Arthur Finkovitch, reciting that Fox

was indebted to the plaintiffs in the various amounts set forth in the bill, and was also indebted to the defendant corporation, whose controlling officers are the individual defendants. The bill sought to set aside a conveyance made to the defendant Joseph A. Finkovitch by Fox while insolvent on the ground that it was a conveyance in trust for the use and benefit of the plaintiffs and that the defendants had procured such transfer by fraud, or, in the alternative, that it was a conveyance to hinder, delay and defraud creditors; and that in either event the property be reached and applied to satisfy the plaintiffs' claims.

The case was heard by a judge of the Superior Court without a jury, who found that the conveyance was in fraud of Fox's creditors, made with the intent to hinder, delay and defraud them; that in this fraud the defendants participated, and that the claims of four of the plaintiffs were established in specified sums, which were less in amount than the value of property alleged to have been fraudulently conveyed. He ordered the defendants to pay them respectively the sums found to be due. The findings upon which this decree was based were in substance that in December, 1921, Fox wrote certain of his creditors that his assets were approximately $4,000 in excess of his liabilities but that he was unable to meet his obligations. The defendant corporation received one of these communications, and Joseph A. Finkovitch went to St. Louis and discussed with Fox the quickest way to liquidate. An arrangement was made between them by which Fox would turn over to Joseph A. Finkovitch all his assets including merchandise and bills receivable. It was agreed that the latter would settle the account of the defendant corporation and the accounts of two other creditors, for whom he purported to be acting, and that he would then obtain an extension for six months from all other creditors by paying them thirty per cent on their claims, leaving Fox to pay the balance at the expiration of the extension period. Finkovitch also agreed to give Fox a new line of credit to enable him to sell goods at low prices so that he could make enough money to pay the other creditors the balance of

their claims. Thereupon, shoes worth at least $6,000 were packed and shipped by Finkovitch to the "Boston Novelty Shoe Co." in Boston, a name sometimes used by the defendant corporation in its business. The accounts receivable amounting to $6,300, some of which were uncollectible, were then assigned to him.

While Joseph A. Finkovitch was in St. Louis, he arranged with his brother Arthur, in Boston, to go with a member of another concern, for whom Joseph A. Finkovitch was acting, to Fox's creditors and secure from them extensions of their claims against Fox for six months. The creditors were told that Arthur Finkovitch had just heard from his brother and that the best thing to do was to sign extensions and thereby get the money as some of Fox's relatives were going to put money into the business. Later Joseph A. Finkovitch delivered these extensions to Fox's attorney. In March, 1922, a draft agreement between Fox and the defendant corporation was prepared and signed, but never consummated. Fox collected some of the accounts receivable after they were assigned and used the proceeds to pay some creditors. Six months later, after creditors had signed the extension agreements and after at least one of them had been informed by Fox of his arrangement with Joseph A. Finkovitch, some of them had a talk with the latter in which he denied that he had received any shoes or anything from Fox or was to pay anything to creditors because of any arrangement with Fox. Joseph A. Finkovitch in fact did nothing by way of settling with any of the creditors except the three whom he represented, namely, the defendant corporation, I. Cohen, and Cohen and Weinstein.

When the arrangement between Fox and Joseph A. Finkovitch was made, Fox was insolvent and Finkovitch knew it. The judge found that Joseph A. Finkovitch, who was acting for the corporation, did not intend to settle with any of the creditors except the three represented by him and obtained the merchandise from Fox by agreeing "to that which he did not intend to do." He also found: "Fox may have thought when he made this agreement that he

was doing the best thing for his creditors, but he must be presumed to have intended the natural consequences of his acts. One consequence was that his creditors extended the time for demanding their claims six months. Fox bargained for that extension. He clothed Finkovitch with authority to negotiate these extensions and it is fair to assume, in face of the letters he had written his creditors, that he should have known they would not stand idly by if they knew that all his assets had been turned over to one creditor, and that some assurances would be required by creditors before executing extensions. Remedies which they might have against him or his estate in bankruptcy might not be effective after six months had elapsed. It is not unreasonable to assume that Fox must have known that other creditors would not agree to extend their claims were they told that Finkovitch was preferred and that for at least seventy per cent of their claims they must trust Finkovitch to extend a new line of credit to Fox and rely upon his making a success of a business in which he had already failed."

The findings of fact, having been made upon conflicting testimony and not appearing to be plainly erroneous, are conclusive. *New York Central Railroad* v. *Stoneman,* 236 Mass. 81, 84. *Hamilton* v. *Coster,* 249 Mass. 391, 395. *Needham Trust Co.* v. *Cookson,* 251 Mass. 160, 163. *Thayer* v. *Atwood,* 259 Mass. 523, 527. The transaction was intended to be and was more than a mere preference for certain creditors. It deprived the debtor of all assets so that they could not be attached by other creditors or applied to the payment of their claims at a time when he was in fact insolvent. It involved an agreement by Joseph A. Finkovitch to obtain an extension of time by creditors so that the debtor might continue in business undisturbed by them, and as part of the same transaction, as a further benefit to the debtor, Joseph A. Finkovitch promised him a new line of credit which would enable the debtor to continue in business and make money to settle with other creditors. He promised to pay all creditors thirty per cent of their claims and intended not to keep his agree-

ment. The evidence justified a finding not only of fraud in law in transferring the property so as to hinder, delay and defraud creditors, but of fraud in fact in the transaction. See *Bernard* v. *Barney Myroleum Co.* 147 Mass. 356. The conveyance, having been found to be fraudulent, is invalid as to other creditors regardless of the nature or amount of the consideration for the conveyance. *Lynde* v. *McGregor,* 13 Allen, 172, 181. *D'Arcy* v. *Mooshkin,* 183 Mass. 382, 384. *Banca Italiana Di Sconto* v. *Bailey,* 260 Mass. 151, 160. In *Briggs* v. *Sanford,* 219 Mass. 572, 574, the court said: "The ordinary rule is that where one deeply in debt or insolvent, by a voluntary conveyance puts his property out of the reach of his creditors, he is presumed to intend the natural consequence of that act, which is to defeat, defraud, hinder and delay his creditors." The participation of Joseph A. Finkovitch and the defendant corporation in the fraud is sufficient to avoid the transfer as to them. *Wadsworth* v. *Williams,* 100 Mass. 126, 130–131. *Gately* v. *Kappler,* 209 Mass. 426, 431. The case is distinguishable in its facts from *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co.* 245 Mass. 69, 73, and *Samuels* v. *Charles E. Fogg Co.* 258 Mass. 402, 406, 407. Those defendants having obtained the property with an actual fraudulent purpose are not entitled to retain any part of it, or to be credited with payments made from it, as against the creditors whose claims were established. *Holland* v. *Cruft,* 20 Pick. 321, 338. *Rubenstein* v. *Lottow,* 220 Mass. 156, 169, and cases cited. *Manufacturers National Bank* v. *Simon Manuf. Co.* 233 Mass. 85, 89–90. *Cunningham* v. *Commissioner of Banks,* 249 Mass. 401, 417–418. On this point the case is to be distinguished from *Means* v. *Dowd,* 128 U. S. 273, where the only fraud was fraud in law.

The bill was to reach and apply property fraudulently conveyed by Fox in payment of the plaintiffs' claims. There was no evidence that Arthur Finkovitch had title, possession or control of any of the property or its proceeds. This is not a proceeding to recover damages against parties who have conspired to do a wrong to the plaintiffs, but its purpose is to reach the debtor's property or its proceeds,

and, as the evidence failed to show that Arthur Finkovitch at any time had possession, control or title to any of the property, he cannot be held even though he participated in the transaction to the extent of assisting in obtaining the assent of certain creditors to an extension of credit to Fox. See *Hubbell* v. *Currier*, 10 Allen, 333; *Rubenstein* v. *Lottow*, 220 Mass. 156, 164; *Lowell* v. *Merchants' National Bank of Manchester*, 283 Fed. Rep. 124, 134; *Tennant & Co.* v. *Gallow*, 25 Ont. 56, 62; *Ladd* v. *Wiggin*, 35 N. H. 421; *James Goold Co.* v. *Maheady*, 38 Hun. 294; *Putzel* v. *Shulhof*, 13 N. Y. Supp. 231; *Hamilton National Bank* v. *Halsted*, 134 N. Y. 520; *Bolling* v. *Harrison*, 2 Patton & Heath, 532.

Interest was computed to February 9, 1929 on the amounts found to be due the plaintiffs whose claims were established. It should now be computed to the date of the decree after rescript. The decree, when modified by ordering the bill dismissed as against Arthur Finkovitch and by including interest on the amounts of the respective claims established to the date of the final decree after rescript, is affirmed with costs.

*Ordered accordingly.*