Statement.

# 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## NORRIS & CO. v. JONES AND OTHERS.

### APRIL 29, 1896.

1. CHANCERY JURISDICTION—*Suit to Avoid Gift—Restoration of Loan by Donee to Donor.*—The right of the creditor of a donor to charge the donee arises out of the fact that the donee has in his possession that which ought to be subjected to the satisfaction of the creditor's debt. But where property or money has been received from an insolvent donor by one who had no reason to suspect such insolvency, and with no intent to defraud the creditors of the donor, and the donee afterwards, before suit brought by such creditor, restores the property or repays the money to the donor, or in good faith applies it to the payment of the debts of the donor, or in like good faith lends it to the donor, all liability of the donee to the creditors of the donor on account of the gift thereupon ceases.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced June 7, 1894.

*Affirmed.*

This was a suit in chancery instituted by the appellants against D'Orsey Jones, his mother, Mrs. Harriet Jones, and others, the chief object of which was to set aside a gift made by D'Orsey Jones to his mother of his interest in the estate of his brother, Charles B. Jones, deceased. The bill charges that D'Orsey Jones is indebted to the complainants in the sum of $1,365.60, contracted in March and July, 1890; that D'Orsey Jones is not a resident of the State; that Charles B. Jones had died in December, 1890, leaving an estate chiefly personalty, worth about $21,000, upon which one Jos. B. Montgomery had taken out letters of administration;

that D'Orsey Jones had and has a large interest in the estate; and that "complainants have been informed, and they believe and charge, that the said D'Orsey Jones has attempted to give away to his mother, the said Mrs. Harriet Jones, his interest in the said estate of his deceased brother, Charles B. Jones, and has directed the said Jos. B. Montgomery, adm'r, as aforesaid, to pay over to her his said interest, but the said gift and direction to pay over the same was, and is, wholly voluntary and supported by no valuable consideration, and is absolutely null and void as to the complainants whose debt was contracted and due prior to the said alleged gift. Complainants charge that the said gift by the said D'Orsey Jones to Mrs. Harriet Jones, his mother, was made with the intent to hinder, delay and defraud the creditors of said D'Orsey Jones, and amongst them your complainants. Complainants are further informed, and they believe and charge, that said Jos. B. Montgomery, administrator, as aforesaid, has already paid over to Mrs. Harriet Jones, or to her order, a considerable part of said interest in said estate, but the exact amount is unknown to complainants; the balance of said interest, however, consisting of a large amount, your complainants believe and charge is still in the hands of said Montgomery, administrator, in the said city of Richmond."

The prayer of the bill, after making the necessary parties, and waiving answers under oath, is "that attachment may issue against the interest of said D'Orsey Jones in the estate of his deceased brother, Charles B. Jones, to subject the same to complainants' said debt; that the said Jos. B. Montgomery, adm'r, be enjoined and restrained from paying over or paying out any more of the said interest until the further order of this court; that the said Harriet Jones be decreed to pay to complainants so much of said interest as has been paid to her or to her order, until the said debt of complainant is satisfied; that in case the said interest of

said D'Orsey Jones in the estate of his deceased brother, Charles B. Jones, be insufficient to pay the said debt of complainants, that a decree may go against him for the balance which shall remain unpaid; that the court will direct and order all proper accounts to be taken and inquiries made, and that the said Jos. B. Montgomery, adm'r, may be decreed to pay to complainants on account of their said debt the said interest of said D'Orsey Jones; that the court will make all proper orders and decrees, and grant to complainants all such other and further and such additional relief as may meet the exigencies of their case and seem just in equity."

Harriet Jones answered the bill, and, amongst other things, denied all fraud in law or in fact; she also denied the insolvency of D'Orsey Jones, at the time of the gift, or if insolvent, that she had any knowledge of it, and setting forth that Charles B. in his lifetime had exacted of each of his brothers and sisters a promise that, upon his death, they would transfer their interest in his estate to her to enable her to pay off mortgages on her farm, and that the transfer was made in pursuance of this promise. She further avers that after she received the money coming from the estate of her deceased son, and a considerable while before the institution of this suit, she had in good faith loaned the said D'Orsey Jones $1,262 of the amount received by her, which was at least $500 in excess of his share of the estate of said Charles B., and that no part thereof had been repaid to her. The other distributees of the estate of Charles B. Jones answered jointly and adopted the answer of Harriet B. Jones as their answer. The administrator also answered the bill, averring that long prior to the institution of this suit, on the order of the distributees, he had paid over to Harriet Jones nearly the entire estate of his intestate.

The other facts appear in the opinion of the court.

*W. W. & B. T. Crump*, for the appellants.

*Alex. Coke*, for the appellees.

RIELY J., delivered the opinion of the court.

The appellee, D'Orsey Jones, was one of a number of distributees of his brother, Charles B. Jones, who died intestate on December 26, 1890, leaving considerable personal estate as well as some real estate. The decedent made the request a short time before his death, that his brothers and sisters would give their shares of his estate to their aged mother to enable her to pay off a mortgage for several thousand dollars which rested on her home. In accordance with this request they signed an order on January 16, 1891, addressed to Joseph B. Montgomery, who had qualified as administrator of Charles B. Jones, deceased, by which they directed him to pay over their shares of the personal estate to their mother, Harriet Jones. This order was signed by D'Orsey Jones as well as by the other brothers and the sisters of the decedent. In pursuance of this order, the administrator paid over to Mrs. Jones by the early part of June, 1891, the sum of $7,639.76, of which sum the share of D'Orsey Jones was $774.63.

After paying off the mortgage on her home and some other debts, a balance of the money so received was left in the hands of Mrs. Jones, and of this balance she let D'Orsey Jones have $1,200 in October, 1891.

D'Orsey Jones was a dealer in leaf tobacco, and at the time he signed the order by which he, along with his brothers and sisters, assigned and gave to their mother their interest in the personal estate of Charles B. Jones, deceased, the firm of D'Orsey Jones & Co., which was composed of D'Orsey Jones alone, and the firm of E. O. Bransford & Co., which was composed of E. O. Bransford and D'Orsey Jones, were largely indebted to Norris & Co., the appellants.

On August 16, 1892, Norris & Co. instituted their suit in equity to subject to their said debts the share of D'Orsey Jones in the estate of his deceased brother, Charles B. Jones, and to compel his mother, Harriet Jones, to pay over to them the amount she had received on account of such share; and they at the same time issued an attachment in equity against the interest of D'Orsey Jones in the said estate, he being at that time a resident of the State of North Carolina.

The gift by D'Orsey Jones to his mother of his share in the said estate, in compliance with the expressed wishes of his deceased brother, would ordinarily have been not only an innocent but a very praiseworthy act, and there is nothing whatever in the record tending to show that it was done with any intention to defraud his creditors. The evidence furnishes no ground for charging that the act was fraudulent *in fact* either as to him or his mother. In her deposition, she states expressly that she was ignorant of his transactions and of any indebtedness from him, and supposed that if he owed any debts he was able to pay them; and the record discloses nothing to the contrary. But being a voluntary assignment, it was fraudulent in law and voidable at the suit of his creditors.

If Harriet Jones, at the time Norris & Co. instituted their suit, had been in possession of the money she had received on account of the share of D'Orsey Jones in the estate of Charles B. Jones, or had invested or used it, or had disposed of it to any other than D'Orsey Jones, or in good faith to his creditors, there could be no question as to the right of Norris & Co. to subject it to their debts, or to hold her responsible for it. But, as we have seen, she let him have twelve hundred dollars nearly a year before of the very money that was paid to her by the administrator of Charles B. Jones, deceased, under the order in writing heretofore referred to, which was several hundred dollars in excess of his share of the money she had so received.

Some question was made as to whether the money she turned over to him was not, at first at least, to be invested by him for her, and was not a loan from her to him. However that may be, a careful consideration of the evidence satisfies us that if such purpose was at first entertained, it was abandoned, and the definite agreement entered into that the money was to be a loan from her to him, before he had invested or used it. The sum of $1,200, which she let him have of the money she had received from the estate of Charles B. Jones, deceased, constituted a loan from her to D'Orsey Jones; and it is to be so treated. At the time she lent this money to him, as well as when she received it, she was wholly ignorant of his indebtedness to Norris & Co., or to any one else, and was free from any intention, either in the receipt of the money or in making the loan, to hinder, delay, or defraud his creditors.

We have then presented this single question: Whether Harriet Jones should be compelled to pay to Norris & Co., as creditors of D'Orsey Jones, the money she had received on account of his share of his brother's estate?

While she retained the money, it being a gift from D'Orsey Jones, she held it in law as a trustee for his creditors, and could have been so charged and compelled to account for it to them. Its possession or the conversion of it to her own use would have created a trust in their favor, which a court of equity would have enforced; but when she returned the money to him, although in the form of a loan, she divested herself of any property belonging to him, and again made the money assets of his estate, and thereby destroyed any ground upon which a trust in favor of his creditors could arise. The trust then expired, and any equity previously existing in their favor ceased.

Where property or money has been received from an insolvent donor by one who had no reason to suspect such insolvency and without any purpose to defraud the creditors

of the donor, and the donee, upon learning of the insolvency of the donor, and before action brought, restores the property or repays the money, or even applies it in good faith to the debts of the donor, all liability of the donee to the creditors on account of the gift thereupon determines. Bump. on Fraud. Conveyances, 588–89.

The principle upon which a court of equity proceeds in cases of this kind is thus expressed by Lane, Chief Justice, in *Swift & Nichols* v. *Holdridge et als.*, 10 Ohio, 230: "The creditor ought to receive his debt, and the law gives him a claim to the property and charges the fraudulent holder as a trustee, in consequence of his possession. The trust is not expressed—created by contract; but it arises by operation of law, in consequence of his *having in his hands* that which ought to be applied to the satisfaction of the creditor's debt. It depends, therefore, on the *possession* of the property. * * * * And if the fraudulent holder has in good faith divested himself of that, which he could not retain without dishonesty, *before* the right of the creditor has accrued, there is nothing remaining upon which to raise a trust, and the relation of trustee to anybody subsists no longer."

In *Wheeler & Green* v. *Kirtland*, 23 N. J. Eq. 13, the facts briefly stated, were these: The husband gave to his wife $20,000, which she accepted without suspecting his insolvency and used it in purchasing her ancestral home. The money was given her in a check of the firm of Kirtland & Co., of which her husband was a member. Some months thereafter the firm failed, and thereupon she raised by mortgage upon her home $20,000, and gave it to her husband, who used it in paying debts of the firm. Wheeler & Green, who were creditors of the firm of Kirtland & Co., a considerable time thereafter, brought suit to subject to their debts the home of the wife, which was bought in great part with the $20,000 given to her by her husband, and had since appreciated in value. Chancellor Labriskie, after stating

the case and the question for decision, said: "I am of opinion that if the donee in such case received the money in good faith, supposing that it was advanced by a person perfectly solvent, and that the gift could not injure his creditors, present or future, and was not intended for such purpose, and the amount is afterwards repaid in full to the source from which it was received, there is no fraud or other ground to infer or create a trust for future or even existing creditors, in the profits of the business or advance of the property after the money is returned, or even while it is kept in good faith.    There is no privity or confidence between the donee and the creditor, or any other thing out of which a trust can arise."

In *Thomas* v. *Goodwin et als.*, 12 Mass. 140, where one summoned as a trustee had received goods of the principal debtor under circumstances indicative of fraud, and which would have fixed him as trustee, but before the service of process upon him had paid debts of the principal to the amount of the goods he received, the court held that, "although previously to that time (the service of the writ) the person summoned as trustee may have received the property of the debtor under circumstances which would render him liable; yet if he has discharged himself of all trust by delivering back to the debtor the property received in such manner that it may be attached by his creditors; or if he has paid the proceeds to *bona fide* creditors of the principal in satisfaction of their just demands, so that at the time of service of the writ he truly has nothing in his hands, he cannot be subjected to a judgment."

And the like doctrine was laid down in *Hutchins* v. *Sprague et al.*, 4 N. H. 469.  See also *Lynde et als.* v. *McGregor et als.*, 13 Allen 182; and *Henderson* v. *Hunton et als.*, 26 Gratt. 926.

In the case at bar, the mother accepted in good faith the money of her son as a gift, without a suspicion of any fraudulent intent on his part, and under the belief that he was

entirely solvent. Some months thereafter, in equal inno-
cency of his financial condition and without any purpose of
enabling him to screen the money from his creditors or to
defraud them, she lent to him a sum larger than his share
of the money she had received, and a part of the same that
had been paid to her. The gift was accepted and the loan
made in entire good faith. All the facts and circumstances
repel any imputation of actual fraud. The entire transac-
tion took place long before the appellants undertook to im-
peach the gift or fix liability upon her. When they es-
sayed to do so, she had neither the money gotten from her
son, nor its fruits. There was nothing in her possession to
affect her with a trust in favor of the plaintiffs, or out of
which it could arise. All that remained to her of the trans-
action was the barren indebtedness of the insolvent donor.

When the plaintiffs instituted their suit, D'Orsey Jones
had gotten back from his mother a sum greater than the
amount he had given her. Although a loan and not simply
a return of the gift, the money nevertheless went into his
estate, and became his absolute property and subject to the de-
mands of his creditors. He was assuredly not made by the gift
and the subsequent loan of a larger sum less able to pay his
debts than if the gift had never been made and he himself had
originally collected from the administrator of Charles B. Jones,
deceased, his share of the money that was paid to his mother.
His creditors were neither injured nor prejudiced by the
transaction. It would be very inequitable to require Mrs.
Jones, under the circumstances, to pay to Norris & Co. a
sum of money equal to the amount she received on account
of the share of D'Orsey Jones in the estate of his deceased
brother.

If she had been garnished as a debtor of D'Orsey Jones,
she would have been entitled, there being no actual fraud,
to set off the loan against the gift, and the balance being in
her favor no judgment could have been given against her.

Opinion.

And so in equity, the gift or any liability on account of it must stand as security *pro tanto* for the repayment of the loan, or in other words the one must be set off against the other, as at law.

We are of opinion that the Chancery Court did not err in holding Harriet Jones absolved from any liability to the appellants, and its decree must be affirmed.

*Affirmed.*