WILBERT F. BARRETT *vs.* WALTER I. HAMEL & others.

Essex. December 3, 1957. — March 5, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Equity Jurisdiction,* Suit in aid of trustee process, Suit to reach and apply. *Trustee Process. Equity Pleading and Practice,* Amendment, Judicial discretion, Appeal. *Trust,* Use of principal, Spendthrift trust. *Fraud. Fraudulent Conveyance.*

The plaintiff in an action begun by trustee process was not entitled, in attempted aid of the trustee process, to maintain a suit in equity, commenced after allowance of a motion to discharge the trustee but before judgment in the action, to reach and apply assets of the defendant in the action allegedly in the hands of the trustee at the time of the service of the trustee writ, where no assets of that defendant were in

the hands of the trustee at the time of service of the subpoena in the suit in equity. [109–110]

Under an indenture of trust empowering the trustee "to pay over, use or expend . . . such portion or portions of the principal as he in his uncontrolled discretion may deem necessary or advisable for the comfortable support, maintenance or welfare" of the settlor, the trustee had power to pay over to the settlor all the assets of the trust in settlement of litigation between the settlor and the trustee with respect to the trust assets and management. [110]

The question of proper exercise of discretion in denying a motion to amend the bill in a suit in equity was presented to this court by an appeal from the denial. [111]

In a suit in equity originally brought to reach and apply in satisfaction of a claim of the plaintiff against the principal defendant assets allegedly held for his benefit by a trustee under a trust indenture, where it appeared that before the commencement of the suit the trustee and the principal defendant had consummated a settlement of litigation between them by a transfer of certain assets by the trustee to the principal defendant and his releasing the trustee from all obligations under the indenture and acknowledging in the release that the trustee no longer held any property for him, the record did not disclose abuse of discretion on the part of the trial judge in denying a motion of the plaintiff to amend the bill by adding allegations of fraud by the trustee on the principal defendant in such settlement, of execution of the release "for the purpose of hindering, delaying and defrauding the plaintiff in the collection of his claim," and of inadequacy of the consideration given to the principal defendant in the settlement. [111–113]

BILL IN EQUITY, filed in the Superior Court on March 24, 1955.

The plaintiff appealed from decrees entered by *Donahue, J.*

In this court the case was submitted on briefs.

*Wilbert F. Barrett,* pro se.

*John J. Ryan, Jr.,* for the defendants Louis H. Hamel and another.

WHITTEMORE, J. The plaintiff on March 24, 1955, brought a bill to reach and apply assets of the defendant Walter I. Hamel, allegedly held by the defendants Louis H. Hamel and L. H. Hamel Leather Company (hereinafter called the corporation), in discharge of Walter's obligation to the plaintiff to pay for legal services rendered in the amount of $17,000 as determined by a jury in a prior action at law, begun by trustee writ. The case was referred to a master whose report was filed December 1, 1955. The plaintiff on

December 30, 1955, filed a motion to amend the bill of complaint. This was denied January 3, 1956, "in open court." On a motion to confirm the report, the court heard further evidence (see *Minot* v. *Minot*, 319 Mass. 253, 258; *Fisher* v. *MacDonald*, 335 Mass. 429, 431), and on January 10, 1956, made findings of fact "in addition to the findings contained in the master's report" and thereupon entered an interlocutory decree overruling the plaintiff's exceptions and confirming the master's report. Final decree dismissing the bill as to the two alleged equitable trustees was entered January 13, 1956. These are the plaintiff's appeals from the denial of the motion to amend, from the decree confirming the report, and from the final decree of dismissal.

The master found facts as stated in this and following paragraphs. The plaintiff in June, 1951, brought a trustee writ against Walter, naming Louis and the corporation as trustees. In that action the jury assessed damages at $17,000, a motion to discharge Louis as trustee was allowed on March 8, 1955, judgment was entered for the plaintiff against Walter and the corporation on July 5, 1955, and on July 25, 1955, execution issued for $18,340.17. No part of the execution had been satisfied.

The report sets out a trust indenture of May 25, 1948, inclusive of a schedule of assets referred to in the trust as assets transferred by Walter to Louis as trustee. By the trust terms the trustee was to pay to Walter "so much of the net income . . . as the trustee in his own uncontrolled discretion may determine . . . [and] shall . . . have . . . authority to make payments . . . of said income for the benefit of . . . [Walter]," and "to pay over, use or expend . . . such portion or portions of the principal as he in his uncontrolled discretion may deem necessary or advisable for the comfortable support, maintenance or welfare of . . . Walter." The instrument also specified that "Neither the settlor nor any other beneficiary under this trust shall have the right to alienate, assign or in any other manner anticipate payments to be made hereunder."

On January 12, 1955, Louis stated in writing, by way of

"answering the plaintiff's allegations of material facts" in the trustee action, that "[p]rior to the service of the writ upon him he did not pay over to Walter . . . any shares of stock, insurance policies or cash, because the only property of this nature in his possession was held by him under the terms of a trust indenture, a copy of which was annexed as 'A' [the May 25, 1948, trust indenture], under which he, Louis . . . had not exercised his discretion in favor of paying over any of the income or principal to . . . Walter . . . and . . . that . . . at the time of service . . . he did not have in his possession any goods, effects or credits of said Walter . . . which could be reached by trustee process." In another suit between Walter and Louis, Essex Equity No. 9611, the latter answered to an interrogatory that he had established an account in his name as trustee for Walter on January 15, 1949, and made certain deposits therein, listed in the answer as on several dates from January 15, 1949, to November 10, 1949, inclusive.

A mutual general release between Walter, Louis and the corporation was executed under date of September 15, 1953, in which Walter expressly released obligations under the trust indenture; the concluding provision of the release is, "It is further agreed that with the signing of this release . . . the parties of the other part hold no other property of any kind nature and description or indenture of trust for and in behalf of the said Walter." The judge in his additional findings found that the release was drawn by Walter's attorney, was examined and executed by Walter and delivered on Walter's authorization. He found further that the release was executed in accordance with the terms of a letter of June 18, 1953, from the attorney for Louis to the attorney for Walter which letter, set out in the master's report, stated that to terminate "this litigation" Louis's attorney would deliver to Walter assets listed. The litigation referred to was, we take it, not the then pending trustee action brought by the plaintiff, but the suit in equity between Louis and Walter, Essex No. 9611, which the release provided was to be dismissed. The letter of June 18, 1953,

among the proposals made therein, stated in substance that the attorney would "pay an amount not exceeding $500 in the settlement of the pending case brought by Wilbert Barrett" (the present plaintiff) and if requested by Walter would "make every effort to settle" that case. That, we take it, was a reference to the trustee action hereinbefore described.

The master made no finding that the corporation held assets of Walter and no finding that Louis held any assets of Walter after the release of September 15, 1953, was delivered.

The concluding statement of the report is that "So far as the question is for me, I find and rule on the documentary evidence above reported that when the plaintiff's bill of complaint in the case at bar was filed in said court, neither the corporation nor . . . Louis . . . had in hands or possession any goods, effects, credits, property, right, title or interest of the said Walter I. Hamel." There is no subsidiary finding inconsistent with this and, so far as it is a question of fact, the finding is conclusive. The decree dismissing the bill in effect rules accordingly. So far as the issue is one of law, that ruling was right.

The plaintiff, as we understand it, contends that the bill should not have been dismissed as against Louis for the reasons that (1) the prior trustee action had not gone to judgment when this bill to reach and apply was served, so that notwithstanding the allowance of the motion to discharge Louis as trustee on March 8, 1955, he is bound in this suit as though holding whatever assets he was chargeable with in that action, and (2) the release of September 15, 1953, was given without "fair consideration" to Walter and was a fraud upon Walter and upon the plaintiff, and the proposed amendment to the bill should have been allowed so as to permit the plaintiff to enforce Walter's right as a cestui que trust as well as another alleged claim, in fraud of Walter against Louis, and also the plaintiff's own rights as a defrauded creditor.

1. There is nothing in the plaintiff's contention that he

takes some advantage against Louis because of the aspect
of the trustee action when process on this bill of complaint
was served on Louis. The original bill was apparently in-
tended, in substantial part, as an equitable extension of the
trustee action. The bill alleges that if the trust indenture
of May 25, 1948, was made it was void as to creditors and
Walter's interest was attachable by trustee process. The
concluding allegation is in substance that at the time of the
service of the trustee writ Louis and the corporation held
assets of Walter. The bill of complaint has no standing as
a means of realizing on the trustee attachment. See *Emery*
v. *Bidwell,* 140 Mass. 271. The supplementary action to
enforce the claim of a plaintiff against a trustee who has
been charged upon his answer is scire facias. G. L. (Ter. Ed.)
c. 246, § 45. If the trustee knowingly and wilfully answers
falsely, and is thus discharged, the plaintiff's remedy is in
tort under c. 246, § 19. See *Musolino, LoConte Co.* v. *Costa,*
304 Mass. 253, 255; *Arlington Trust Co.* v. *Le Vine,* 291
Mass. 245, 249. This bill in equity is a new proceeding. In
its unamended form it could operate only to reach whatever
assets of Walter were in fact held by Louis on the date of
service of the subpoena. See G. L. (Ter. Ed.) c. 214, § 3 (7).
It is immaterial, under the unamended bill, whether on that
date Louis could have been charged in the trustee action
for assets held in Walter's trust in 1951 when the trustee
writ was served even though he did not hold such assets at
the date of judgment in the trustee action. In view of the
findings of the release and of other relevant facts there is
no basis for concluding that in March, 1955, when Louis
was made a party in the case now before us, he was in fact
holding any assets in which, as between him and Walter,
the latter had any interest. The power in the trustee "to
pay over . . . such portion or portions of the principal as
he . . . may deem necessary or advisable for the . . . wel-
fare of the said Walter . . ." included, we think, the power
to pay over all the assets of the trust in settlement of litiga-
tion about the trust assets and management.

2. It was within the judge's discretion to deny the mo-

tion to amend the bill of complaint. *Reno* v. *Cotter*, 236 Mass. 556, 563. *Brooks* v. *Gregory*, 285 Mass. 197, 206. *Urban* v. *Central Massachusetts Electric Co.* 301 Mass. 519, 524. *White* v. *White, post*, 114, 117. The question of the proper exercise of this discretion, in this equity case, is presented by the appeal. We think, for reasons to be stated, that no error is shown. See *Abbott* v. *Bean*, 285 Mass. 474, 478–479. Compare *McDade* v. *Moynihan*, 330 Mass. 437.

The proposed amendment avers not only a fraud on Walter but also that Walter, Louis, and the corporation executed the release "for the purpose of hindering, delaying and defrauding the plaintiff in the collection of his claim against Walter . . ." and that the total claims released were "at least $96,600 plus interest from November 10, 1949," and, in substance, that the consideration given in exchange was of greatly less value. The defendants rely upon our cases which hold that a right of action for fraud is not assignable and that it would be against public policy to permit an assignee to litigate a fraud practised upon his assignor. See *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 479; *Mulready* v. *Pheeny*, 252 Mass. 379, 382; *National Shawmut Bank* v. *Johnson*, 317 Mass. 485, 488. Such cases dispose of much of the proposed amended bill but they do not meet all of the plaintiff's claim.

We assume without deciding that, with appropriate specifications, a claim based on intentional fraud in respect of the release could be stated. In the recent case of *Ware* v. *Gulda*, 331 Mass. 68, we held that a bill would lie to reach and apply assets of a trust with provisions similar to those here shown. We assume therefore that if the release could be shown to have been an intentionally fraudulent transfer (G. L. [Ter. Ed.] c. 109A, § 7[1]), the plaintiff might make a case for holding Louis as though he had been in possession of the trust assets when this bill was brought. But we do

---

[1] "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

not think there was a sufficient showing of the likelihood that such a case could be made out to require the allowance of the amendment. The bare allegation of fraud is not forceful. See *Krebiozen Research Foundation* v. *Beacon Press, Inc.* 334 Mass. 86, 90. Here, because of the findings, that allegation does not stand alone and the relevant facts found tend on the whole not to support it but to disprove it. The letter of June 18, 1953, from Louis's counsel to Walter's counsel appears on its face to be an honest effort to settle claims then in litigation between Walter and Louis.[1] The proposal therein in respect of the claim of the plaintiff in the then pending trustee action appears straightforward and proper. Notwithstanding the settlement, if the plaintiff had reached assets of Walter by the trustee process of 1951 the release could not have deprived him of his rights thereto. That a creditor was trying in court to reach Walter's interest in the trust does not necessarily establish that a revocation of the trust was intentionally fraudulent. The participation of attorneys for Louis and for Walter in the settlement of a then pending suit in equity speaks against an intentionally fraudulent transfer. So does the plaintiff's assertion that $96,600 in claims were released for little value to avoid the very much smaller claim of the plaintiff ($17,000+). So do some of the allegations of the

---

[1] "This letter is in confirmation of our telephone conversation of yesterday afternoon.

"I thoroughly agree with your statement that this is not a matter which would result in benefit to either party if it were tried in court. Not because I feel that your client is entitled to anything, but rather because I hope that ultimately there may be a family reconciliation, I have gone far beyond any point which the facts could reasonably justify in meeting your demands.

"Taking all of the plaintiff's claims at full face value, to terminate this litigation, I will: . . . [six statements of proposed action in respect of assets and claims follow].

"It is my honest belief that the foregoing represents far more than the plaintiff could hope to recover even assuming that the court sustained all of his contentions. Frankly, I am assuming a responsibility that goes far beyond anything which my client has ever approved. Personally I would prefer to try the case, but as I have already pointed out for family reasons I believe everyone will be better off in the long run if an honest attempt is made to reunite these brothers.

"Of course I realize that this letter binds my client and probably me personally. I cannot allow this to stand as a continuing offer. This offer is without prejudice and will be automatically withdrawn and cancelled unless formally accepted on or before June 25th next."

proposed amendment such as the averment that the release was signed by Walter "without fair and adequate consideration being paid to him, while he was in need and forced to accept what he could get . . . ." The judge was entitled to weigh the fact that the parties had been at issue, that the facts found did not, with much of any force, support the claim of intentional fraud, and that the proposed amendment did not specify other facts relevant to the claim of intentional fraud, such as to destroy the significance of the facts found. If there are some indications in the averments and the facts found that the claim might conceivably be made good, they are insufficient to take the issue out of the area of the judge's discretion.

No more need be said than has been stated in section 1, *supra*, as to the allegation of the proposed amendment that Louis's answer in the trustee action was false and intended to deceive the court because he knew that the assets of the trust could be reached by trustee process. We do not come to the question of whether there is a basis for calling "void" under G. L. (Ter. Ed.) c. 246, § 25,[1] a transfer to a trustee of the *Ware* v. *Gulda* type (331 Mass. 68). Compare G. L. (Ter. Ed.) c. 109A, § 7.

3. We have considered each of the objections (properly, exceptions) to the master's report and find no prejudicial error in respect thereof. In view of the fundamental aspect of the defence to the plaintiff's claim it will serve no useful purpose to discuss the points of evidence or substance which the plaintiff has argued in connection with the exceptions, so far as any such are presented on the report.

4. We have considered all of the contentions of the parties including those not discussed herein, and find no error. The entry must be

*Interlocutory decrees affirmed.*
*Final decree affirmed with costs of*
*the appeal to the defendants.*

---

[1] "A person summoned as trustee having goods, effects or credits of the defendant in his possession by a conveyance or title void as to the creditors of the defendant may be adjudged a trustee, although the defendant could not maintain an action therefor against him."