MARGARET M. MODIN vs. ELIZABETH HANRON & others.

Middlesex.    December 3, 1963. — January 7, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Fraudulent Conveyance.   Estoppel.*

A transferee of funds which he merely took "for safekeeping," although he knew that the transfer was made with intent to defraud a creditor of the transferor, did not participate so actively in the fraud that, in a suit in equity by the creditor against the executors of the will of the transferee, the executors were barred from showing that the transferee had voluntarily returned the funds to the transferor; and no ground for relief against the executors appeared.

BILL IN EQUITY filed in the Superior Court on December 8, 1959.

The suit was heard by *Ford, J.*

*Arthur M. Gilman (Robert F. Murphy* with him) for the plaintiff.

*Vincent F. Leahy* for the defendants.

CUTTER, J.   The plaintiff (Modin) seeks to reach and apply assets of Elizabeth Hanron (Hanron), the daughter of the late George S. Maloof (Maloof), which Modin alleges were transferred to Maloof by Hanron in furtherance of a conspiracy to hinder, delay, and defraud Modin as a creditor of Hanron.   Emil G. Maloof, Jeanne Naman, and Alfred Naman (the executors) are executors of Maloof's will and are alleged to have certain of Hanron's assets in their hands.   The bill prays that Hanron's debt be established, that the transfer be set aside, and that the transferred funds be applied to the indebtedness.   The bill was dismissed by final decree.   Modin appealed.   The facts are stated upon the basis of the trial judge's report of material facts.

In February, 1956, Modin gave a deed of certain real estate to Hanron, in return for Hanron's check for $2,800

drawn on the State Street Trust Company (State Street) to Modin's order. "Hanron issued a stop payment order . . . and the check was not paid. . . . In March, 1956, Hanron's sole assets consisted of her checking account balance . . . $3,000." Acting upon the advice of. "a third person to draw her money out of State Street and to place it beyond the reach of Modin," Hanron did withdraw her money "and transferred it to Maloof for safekeeping until the Modin matter was concluded. Both Hanron and Maloof knew the full details of the Modin controversy" and that Hanron had no other assets. "Both knew and understood the sole purpose of the transfer . . . was to place the funds beyond the reach of . . . creditors, especially Modin. Both anticipated litigation by Modin against Hanron."

In April, 1956, Modin brought an action against Hanron. A trustee writ was served on State Street, which answered funds to the extent of $13. Modin recovered judgment on August 11, 1958, and execution was issued on August 15, 1958, on which there is a balance unsatisfied of $2,466.88. In July, 1958, before the law action went to judgment, Maloof returned the $3,000 to Hanron, leaving no funds of hers in his possession or control.

The present bill in equity was entered on December 8, 1959, when "the executors did not have any assets of Hanron in their hands and possession."

1. The bill, viewed merely as a bill to reach and apply, was properly dismissed for, when the suit was commenced, the executors had no funds of Hanron in their possession and the relief sought was no longer possible.

2. Modin filed no motion to amend the bill prior to the final decree to seek any different type of relief or to attempt to impose direct liability upon Maloof or his estate as an alleged active participant in a scheme of fraudulent conveyance. Nevertheless, Modin's contentions in this court have been based upon the theory that Maloof so participated in a scheme to hinder and defraud Modin that his executors must be barred in equity from showing that he returned the $3,000 to Hanron.

We assume that the transfer to Maloof could have been set aside while it remained in effect as a conveyance made with actual intent to defraud Modin. See G. L. (Ter. Ed.) c. 109A, §§ 7, 9, 10; *David* v. *Zilah,* 325 Mass. 252, 256; *Virta* v. *Mackey,* 343 Mass. 286, 290–291. See also *Barrett* v. *Hamel,* 337 Mass. 105, 111–112. Before this bill was brought, however, and before Modin's claim was reduced to judgment, the property transferred by Hanron to Maloof was returned. No creditor of Maloof has been shown thereby to have been injured. Maloof's action in returning the money to Hanron was not prohibited by any ''rule of law or equity." *McCann* v. *Commissioner of Int. Rev.* 87 F. 2d 275, 276–277 (6th Cir.). See *Springfield Homestead Assn.* v. *Roll,* 137 Ill. 205, 212–213; *Fulton* v. *McCullough,* 232 Iowa, 1220, 1223–1224; *Insurance Co. of Tenn.* v. *Waller,* 116 Tenn. 1, 18–19; Glenn, Fraudulent Conveyances (1940 ed.) § 57; Annotations, 89 A. L. R. 1166, 1168; 108 A. L. R. 1508. Various Massachusetts cases are consistent with this view. See *Rayner* v. *Whicher,* 6 Allen, 292, 295. See also *Hyland* v. *Hyland,* 278 Mass. 112, 120; *O'Gasapian* v. *Danielson,* 284 Mass. 27, 34–35. In *David* v. *Zilah,* 325 Mass. 252, 256, this court held that it was error to impose personal liability (above the value of the transferred property in their hands) upon two transferees of property fraudulently conveyed.

Modin relied principally on *Manufacturers Natl. Bank* v. *Simon Mfg. Co.* 233 Mass. 85, 90, and *Massachusetts Trust Co.* v. *Simon Mfg. Co.* 237 Mass. 92, 96. In these cases, transferees of property conveyed with the actual intent to defraud certain creditors of the transferor were held not entitled, in suits in equity by such creditors, to show that the transferees, respectively, had used some of the transferred funds to pay other creditors of the transferor. In these cases, and in *R. E. McDonald Co.* v. *Finkovitch,* 270 Mass. 362, 366–367, however, there was substantially more active participation by the transferees (compared with the bare custodianship undertaken by Maloof) in the fraudulent scheme and there was no voluntary reconveyance of the

property to the original grantor. Maloof's executors are not barred in equity from showing his voluntary reconveyance of the $3,000 to Hanron.

*Decree affirmed with costs.*