NORTHBOROUGH NATIONAL BANK *vs.* FREDERICK A. RISLEY.

Worcester. April 7, 1981. — August 12, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & NOLAN, JJ.

*Fraudulent Conveyance.*

A transferee of real property who, knowing that the transfer had been
made with intent to defraud a creditor of the transferor, sold the prop-
erty to a good faith purchaser for fair consideration and delivered the
net proceeds to the transferor before the creditor's claim had been
reduced to judgment was not personally liable to the creditor.
[349-351] HENNESSEY, C.J., dissenting.

CIVIL ACTION commenced in the Superior Court on
April 5, 1977.

The case was heard by *Meagher, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Darragh K. Kasakoff* for the defendant.

*Shirley A. Doyle* (*Thomas J. Donahue, Jr.,* with her) for
the plaintiff.

BRAUCHER, J.   A debtor conveys property to his wife, and
she conveys it to her sister's husband, all with an intent to
put the property beyond the reach of a creditor.  Before the
creditor's claim is reduced to judgment, with knowledge of
the fraudulent intent, the transferee participates in a sale of
the property to a good faith purchaser for fair considera-
tion, and pays over the net proceeds to the debtor.  Taking
into account the extent of the transferee's participation as in
*Modin* v. *Hanron,* 346 Mass. 629, 631-632 (1964), we hold
that the transferee is not personally liable to the creditor.

A judge of the Superior Court made findings based on a
statement of agreed facts, which incorporated exhibits and
a deposition of the defendant.  We summarize the findings.

The debtor, Richard A. Allen, guaranteed certain debts owed to the plaintiff bank by a corporation of which he was an officer and stockholder. In March, 1976, the bank demanded payment. In May, 1976, Allen conveyed his interest in certain real estate in Northborough to his wife, Judith P. Allen, for nominal consideration. On June 4, 1976, the bank sued Allen on the debt. On August 3, 1976, the debtor's wife conveyed the real estate to the defendant Risley, her sister's husband, without consideration. The conveyance was made with an intent to place the property out of the reach of the plaintiff bank, and the defendant knowingly participated in the transfer. The deed was recorded on August 9, 1976, and on that day the bank commenced an action against the Allens in the nature of a suit to set aside a fraudulent conveyance.

In February, 1977, attorneys for the Allens prepared a purchase and sale agreement for the real estate, which was executed by the defendant and by the Lottiers, husband and wife, the prospective purchasers. By recorded deed dated March 23, 1977, the defendant conveyed the property to the Lottiers, who in good faith paid a fair consideration. The net proceeds took the form of a check for $6,339.45, drawn by the Allens' attorney and payable to the defendant. He indorsed it in blank and delivered it to the Allens. The defendant received no benefit from these transactions and retained no part of the sale proceeds.

The complaint in the present action was filed in April, 1977. In July, 1977, the bank's action against Allen was transferred from a District Court to the Superior Court, and a judgment for $50,000 plus interest was entered against Allen. Execution was issued, but no part of the judgment or execution has been paid. Both Allens are insolvent and have filed petitions in bankruptcy. In the present action a judge of the Superior Court gave judgment for the bank against the defendant Risley in the amount of $6,339.45, plus interest. The defendant appealed, and we transferred the case to this court on our own motion. We reverse the judgment and order judgment for the defendant.

The findings that the transfer to the defendant was made with an intent to place the property out of the reach of the

plaintiff bank and that the defendant knowingly participated are not clearly erroneous. Thus the transfer was fraudulent under G. L. c. 109A, § 7, as a transfer "with actual intent . . . to hinder, delay or defraud . . . creditors," and a creditor with a matured claim could have it set aside to the extent necessary to satisfy his claim. G. L. c. 109A, § 9. As the judge ruled, the sale to good faith purchasers for value successfully put the property out of the plaintiff's reach. But the defendant remained personally liable at least to the extent of proceeds remaining in his hands. *Citizens Bank & Trust Co.* v. *Rockingham Trailer Sales, Inc.,* 351 Mass. 457, 461-462 (1966). *Joseph P. Manning Co.* v. *Shinopoulos,* 317 Mass. 97, 100 (1944). See G. Glenn, Fraudulent Conveyances and Preferences § 239 (1940); McLaughlin, Application of the Uniform Fraudulent Conveyance Act, 46 Harv. L. Rev. 404, 443 (1933).

The question remains: what is the effect of the delivery of the proceeds to the debtor? In several cases where the transferee in the fraudulent conveyance participated actively in the fraudulent scheme, we have held that the transferee was not entitled to show, in a creditor's suit, that some of the funds had been used to pay other creditors. *R.E. McDonald Co.* v. *Finkovitch,* 270 Mass. 362, 366-367 (1930). *Massachusetts Trust Co.* v. *Simon Mfg. Co.,* 237 Mass. 92, 96 (1921). *Manufacturers Nat'l Bank* v. *Simon Mfg. Co.,* 233 Mass. 85, 90 (1919). Cf. *Citizens Bank & Trust Co.* v. *Rockingham Trailer Sales, Inc.,* 351 Mass. 457, 461 (1966) (no credit for consideration paid to debtor). In *Modin* v. *Hanron,* 346 Mass. 629, 631-632 (1964), a case much like the present one, we distinguished such cases as involving "substantially more active participation by the transferees" and "no voluntary reconveyance of the property to the original grantor," and held that the voluntary reconveyance discharged the transferee's liability. Accord, *David* v. *Zilah,* 325 Mass. 252, 256 (1950); *Thomas* v. *Goodwin,* 12 Mass. 140, 142 (1815); *Wheeler & Green* v. *Kirtland,* 23 N.J. Eq. 13, 18-19 (1872); *Norris & Co.* v. *Jones,* 93 Va. 176, 182 (1896); *Vinlis Constr. Co.* v. *Roreck,* 67 Misc. 2d

942, 949 (Sup. Ct. 1971), aff'd, 43 App. Div. 2d 911; appeal dismissed, 35 N.Y.2d 715 (1974); G. Glenn, Fraudulent Conveyances and Preferences § 57 (1940).

The plaintiff seeks to distinguish the *Modin* case, pointing out that there the property transferred was returned to the debtor, while in the present case the property was sold and proceeds were returned. It argues that this shows more active participation by the transferee in the fraudulent scheme. We think, however, that the change in the form of the asset is not dispositive. See *Schneider* v. *Patton,* 175 Mo. 684, 724-726 (1903); *Swift* v. *Holdridge,* 10 Ohio 230, 232 (1840). The facts found show a transferee who was used as an instrument by the debtor. His knowledge of the facts was minimal; he sought and received no benefit from the transactions. We think he comes within the principle of the *Modin* case.

*Judgment reversed.*

*Judgment for the defendant.*

HENNESSEY, C.J. (dissenting). Whatever the merits of the rule established in *Modin* v. *Hanron,* 346 Mass. 629 (1964), the application or extension of the rule to sanction the defendant's conduct in the present case is unwarranted.

Several factors readily distinguish this case from *Modin.* In *Modin,* the transferee accepted cash withdrawn from a bank by a transferor seeking to hinder creditors. The transferee knew that the sole purpose of the transfer was to place the funds beyond the reach of creditors, but nevertheless accepted the funds "for safekeeping." Before the creditor's action against the transferor went to judgment, however, the transferee returned the funds to the transferor. We decided in that case that the transferee's liability was to be determined by the amount of participation by the transferee in the transferor's fraudulent scheme and, applying that measure, concluded that "bare custodianship" was not sufficient to render the transferee liable. *Id.* at 630, 631. Cf. *Hickson* v. *Thielman,* 147 Cal. App. 2d 11, 15 (1956) (where evidence supported conclusion that transferee con-

spired with transferor to defraud plaintiffs, return of money to transferor from transferee would not relieve transferee of liability. "It is immaterial whether [transferee] entered into the scheme for the benefit of herself or for the benefit of [the transferor]").

The defendant in the case at bar was more than a mere custodian or stakeholder. He accepted a transfer of real property — by its nature susceptible of attachment by creditors and subject to a system whereby its sale or transfer was easily inhibited — and transformed it into a check, indorsed in blank. Prior to the sale of the real property to a bona fide purchaser, the defendant was aware that there was a creditor after the transferor and that that creditor was trying to attach the property in question. Under *Modin, supra* at 631, this involvement of the defendant is sufficiently "active participation" to render him liable, but the majority denies this in a single conclusory sentence.

The record suggests that when the defendant accepted the transfer from his sister-in-law he was unaware of her intent to hinder creditors, and that it was not until a short while before he subsequently sold the property to a bona fide purchaser that the defendant knew he was frustrating creditors. Assuming this to be so, there remains an obvious way out of the dilemma. It is succinctly presented in a case cited by the majority. "An honest man will not take a fraudulent conveyance. If a man holds property fraudulently conveyed, as soon as he comes to a sense of his moral duty, he will restore it to those to whom it belongs: — he ought to give it back to him from whom he received it, that it may be applied to his debts if wanted, or to his benefit if not necessary for this purpose. The Law, to discourage frauds, does not compel him to restore it to the fraudulent grantor; yet no man will retain it for a moment who desires the reputation of honesty, or possesses the sense of justice." *Swift* v. *Holdridge,* 10 Ohio 230, 231 (1840). Cf. *Damazo* v. *Wahby,* 269 Md. 252, 256 (1973).

Consistent with the standard that I believe was established in *Modin,* I would affirm the judgment for the plaintiff.