In re the BERLYN CORPORATION, Debtor.

Bankruptcy No. 90–41927–JFQ.

United States Bankruptcy Court, D. Massachusetts.

Feb. 7, 1991.

David A. Parke, Bulkley, Richardson & Gelinas, Springfield, Mass., for Peter Gabor Kalman.

Louis Robin, Hendel, Collins & Newton, Springfield, Mass., for debtor.

CONCLUSIONS OF LAW AND ORDER
ON SECTION 362 MOTION OF
PETER GABOR KALMAN

JAMES F. QUEENAN, Jr., Chief Judge.

Peter Gabor Kalman ("Kalman") moves for an order (i) confirming that the automatic stay in effect under § 362 of the Bankruptcy Code does not apply to his pending motion in the district court to ob-

tain disbursement of a $1.7 million supersedeas deposit, and (ii) modifying the automatic stay to permit completion of a patent infringement suit and, if the stay applies to the pending supersedeas deposit motion, to permit prosecution of such motion. The Berlyn Corporation (the "Debtor") consents to completion of the patent infringement litigation but opposes on fraudulent transfer grounds modification of the stay with respect to the disbursement motion.

## I. FACTS AND PRIOR PROCEEDINGS

The material facts are undisputed. Kalman and the Debtor are in the final stages of patent infringement litigation which, with a predecessor action, has spanned twelve years. On August 11, 1988, Judge Freedman of the District Court for the District of Massachusetts entered judgment in favor of Kalman and against the Debtor in the sum of $1,544,916.34 including prejudgment interest and costs. The court had earlier ruled that the Debtor's liability was established under principles of collateral estoppel by a judgment previously issued by another district court in Kalman's favor against a customer of the Debtor.

Judge Freedman's judgment satisfied neither party; both appealed to the Court of Appeals for the Federal Circuit. The judgment was stayed upon the Debtor depositing, as a supersedeas deposit, $1.7 million represented by a certificate of deposit in the name of the clerk of the district court.

On September 13, 1990, the court of appeals issued its decision affirming the Debtor's liability for patent infringement but declaring that Judge Freedman had erred in denying Kalman's motion to add his corporation, Process Developments, Ltd. ("PDL"), as a plaintiff. Judge Freedman had measured Kalman's damages by calculating the profits which PDL lost because of the infringement and then taking 50% of that amount as Kalman's damages in light of his 50% stock interest. The court of appeals also ruled that Judge Freedman had erred in deducting British corporate taxes in computing damages.

On September 26, 1990, the Debtor filed with the court of appeals a petition for rehearing and a suggestion for a rehearing *en banc* contending that the court had erred in directing that PDL be added as a plaintiff. The Debtor challenged no other aspect of the decision. On October 31, 1990, the court of appeals denied the Debtor's petition for a rehearing by the panel. It deferred action, however, on the suggestion for an *en banc* rehearing, and requested that Kalman respond to the suggestion for such a rehearing.

In the meantime, on October 12, 1990, Kalman had filed a motion in the district court seeking an order disbursing from the supersedeas deposit an amount in excess of $1,800,000, the amount of the judgment plus post-petition interest thereon. On November 6, 1990, before the district court had acted on the motion, the Debtor filed its chapter 11 petition here.

Both parties wish to complete the proceedings now pending before the court of appeals, which issued its mandate on November 7, 1990. They also both want that court to clarify its decision by declaring whether addition of PDL as a co-plaintiff relates back to the original filing of Kalman's complaint with the district court, an important issue for statute of limitations purposes. The Debtor strongly opposes, however, prosecution by Kalman of the disbursement motion pending in the district court. It says that the supersedeas deposit represents the fruits of a fraudulent transfer made by the Debtor several years before, and that these funds should be held for the benefit of all creditors, not just Kalman. This requires recitation of a bit more of the history of this protracted struggle.

The Debtor operates manufacturing facilities at 28 Bowditch Drive, Shrewsbury, Massachusetts. The Town of Shrewsbury purchased the property in 1977 through issuance of municipal bonds; it then leased the property to the Debtor under terms calling for rent sufficient to amortize the bonds and giving the Debtor an option to purchase the property for a nominal sum at the end of the lease term. On October 31,

1983, after an adverse judgment on the patent case had been entered against a customer of the debtor by another federal district court, the Debtor conveyed its interest in the lease, including the option to purchase, to Gerard E. Berlyn ("Berlyn"), its principal stockholder. On July 18, 1987, Berlyn conveyed the lease and option to his children, Lawrence P. Berlyn and Lynne F. Berlyn, as trustees of KLN Associates ("KLN"), a Massachusetts trust.

Kalman thereafter, on December 18, 1987, filed a new complaint in the District Court for the District of Massachusetts asserting among other things that the Debtor's transfer of its lease was a fraudulent transfer under Mass.Gen.L. ch. 109A. He sought an attachment of the lease, stating that it was "the only identified asset which may be used to satisfy plaintiff's probable judgment." The district court denied Kalman's request for an attachment and deferred further action on the fraudulent transfer issue. This permitted the lease to be used in a financing which raised the bulk of the funds for the supersedeas deposit. On November 22, 1988, KLN borrowed $1,500,000 from Commerce Bank & Trust Company, assigning the lease as security. These funds are apparently the principal source of the $1.7 million supersedeas deposit.

## II. THE FRAUDULENT TRANSFER IS- SUE

■ The Debtor poses a rather ingenious fraudulent transfer argument, laced somewhat with principles of preference law. The Debtor has Kalman, like a chameleon, changing from the party complaining of a fraudulent transfer to the party charged with disgorging its fruits. Acting for the benefit of all creditors as representative of the bankruptcy estate, the Debtor says that the transfer of the lease to Berlyn was indeed a fraudulent transfer, which Berlyn perpetuated by later assigning the lease to KLN. As the Debtor sees it, the bankruptcy estate may recover either the property or its proceeds, including mortgage proceeds. The Debtor relies upon § 550(b) of the Bankruptcy Code which only prohibits recovery from "a transferee that takes for

value, including satisfaction or security of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or ... any immediate or mediate good faith transferee of such transferee." Kalman, argues the Debtor, cannot be such a party because his knowledge of the lease transaction and of the likely source of the security deposit makes him a recipient of the proceeds *with* "knowledge of the voidability of the transfer." Hence, says the Debtor, the court should not lift the stay because of the viability of the fraudulent transfer action which the Debtor will seek to prosecute by taking over that aspect of the second complaint filed by Kalman in the district court.

■ The automatic stay bars Kalman from pursuing his disbursement motion in the district court, but not because the supersedeas deposit is property of the bankruptcy estate as contended by the Debtor. Section 362(a)(1) bars the "commencement or continuation ... of a judicial ... proceeding against the debtor that was or could have been commenced before the commencement of the case, or to recover a claim against the debtor that arose before the commencement of the case." Kalman's pending disbursement motion clearly comes within the sweep of this prohibition. Thus it makes no difference whether the supersedeas deposit is "property of the estate" within the meaning of other subsections of § 362(a) which effect a stay against acts to obtain, or enforce a lien against, "property of the estate." The Debtor's argument that its proposed fraudulent transfer action constitutes property of the estate under § 541(a)(3) is therefore unnecessary. The argument is also without merit; § 541(a)(3) includes only "any interest in property that the trustee recovers under section ... 550," not the cause of action for such recovery.

■ Hence the question is not whether the automatic stay bars prosecution of the disbursement motion but rather whether there is cause to vacate the stay to permit such prosecution. The Debtor says that cause does not exist because as estate rep-

resentative it seeks to take over the pending chapter 109A fraudulent transfer action, add Kalman as a party defendant, and recover the deposit for the estate and all its creditors, including Kalman. I conclude that there is no merit to this position and that cause does exist to lift the stay.

The Debtor's argument has a number of flaws. The first and perhaps most basic is its implied premise that a cause of action for a fraudulent transfer which has yet to be established in court is reason to delay Kalman realizing upon his security. If the Debtor had brought a separate action seeking a preliminary injunction against disbursement of the deposit, it would have had to establish the traditional requisites for such an injunction, including likelihood of success on the merits and irreparable damage to the Debtor which outweighs the harm to Kalman. The Debtor has not sought to establish these facts by affidavit. We are left to speculate, for example, on the amount and nature of the consideration paid by Berlyn for the lease.

■ There are, moreover, serious difficulties with the merits of the Debtor's fraudulent transfer case. It is true that a cause of action for a fraudulent transfer may in a proper case include recovery of proceeds of a later transfer of the property, at least to the extent that the proceeds remain in the hands of a transferee. *Northboro Nat'l Bank v. Risley,* 384 Mass. 348, 424 N.E.2d 522 (1981); *Citizens Bank & Trust Co. v. Rockingham Trailer Sales, Inc.,* 351 Mass. 457, 221 N.E.2d 868 (1966). There is no apparent reason why mortgage proceeds should not come within this principle. And it may also be proper in a particular case to trace these proceeds to others under a constructive trust theory in order to prevent the unjust enrichment of any recipient. All of this is fine in theory. It does not, however, support recovery of the supersedeas deposit.

Although the deposit arguably represents proceeds of the alleged fraudulent transfer, these proceeds have brought about a benefit rather than a detriment to the Debtor, through KLN. The precise transaction with KLN is unclear. KLN apparently pledged the funds with the district court to secure the Kalman claim, in which event KLN would have a contingent claim against the Debtor as surety, or it loaned the funds to the Debtor who itself created the supersedeas deposit. If the lease had never been transferred by the Debtor, it would have been available to the Debtor as security for a loan to raise funds for the deposit. Creation of the deposit by the Debtor from such a loan would not have been a fraudulent transfer to Kalman because it would have been supported by fair consideration consisting of Kalman's claim against the Debtor. Mass.Gen.L. ch. 109A, § 3. This is in substance what actually transpired. The Debtor has therefore been damaged not by the creation of the supersedeas deposit but rather by the resulting additional debt owed to KLN. If anything is to be now avoided as fraudulent, it would be that additional debt.

■ Kalman, moreover, is entitled to retain the supersedeas deposit even if the deposit is considered to be in the nature of property which has been fraudulently transferred, and even if Kalman is treated as a party with "knowledge of the voidability of the transfer" under § 550(b). This is so because Massachusetts law, which necessarily controls the pending fraudulent transfer action, protects the lien of a party who has furnished value for a consensual security interest in the property. *U.S. Fidelity & Guar. Co. v. English Constr. Co.,* 303 Mass. 105, 20 N.E.2d 939 (1939). Kalman furnished contemporaneous value for the supersedeas deposit through relinquishment of the right which he would otherwise have had to immediate collection of the judgement, and the claim itself constituted antecedent value.

## III. CONCLUSION

The Debtor's fraudulent transfer argument is both premature and without merit. Nor should the supersedeas deposit be impressed with a fraudulent transfer claim under general principles of unjust enrichment. Rather than being unjustly enriched, Kalman has dearly paid for his underlying claim.

**174**

There is cause to vacate the automatic stay in order to permit Kalman to press his disbursement motion pending in the district court. The judgment approved by the court of appeals can be no less than the amount of the deposit, and will likely be more. Technically, that motion should perhaps be prosecuted by PDL if the court of appeals affirms PDL's retroactive rights, but I leave that issue to the district court.

It is therefore

ORDERED, that the automatic stay in effect under 11 U.S.C. § 362 is vacated so as to permit both Kalman and PDL to continue prosecution of the pending patent litigation and disbursement motion.