FLEET NATIONAL BANK OF MASSACHUSETTS[1] *vs.* JUDITH
MERRIAM & others.[2]

No. 95-P-2113.

Suffolk. June 12, 1998. - October 8, 1998.

Present: KASS, SPINA, & BECK, JJ.

*Fraudulent Conveyance. Jurisdiction,* Fraudulent conveyance, Superior Court.
*Bankruptcy,* Fraudulent conveyance, Stay of other proceedings.

In an action on a judgment seeking recovery against a bankrupt's spouse and
spouse's parents on the ground that the conveyances of the bankrupt's
residence to them were fraudulent, the Superior Court was not deprived of
jurisdiction over the action by the automatic stay provisions of 11 U.S.C.
§ 362, where the trustee in bankruptcy did not and, at the time, could not
assert any claim against the premises, and thus the action could not pos-
sibly have affected the bankruptcy creditors. [593-594]
A judgment creditor may recover in a fraudulent conveyance action from the
transferees of fraudulently conveyed assets, who were conscious
participants in the transaction, to the extent the liquidated proceeds of the
assets do not satisfy the judgment. [594-596]

CIVIL ACTION commenced in the Superior Court Department on
December 4, 1991.

The case was heard by *Charles F. Barrett,* J.

*Lisa Ayn Padilla* (*John N. Greenwood* with her) for the
plaintiff.

*Philip E. Murray, Jr.,* for the defendants.

KASS, J. Shawmut Bank, N.A. (Shawmut or the bank),
recovered a judgment against Richard Merriam in Boston
Municipal Court in the amount of $37,591.85 on account of
loan indebtedness to Shawmut. That judgment spawned an ac-
tion to recover the amount of the judgment in Superior Court
against Merriam's wife, Judith, and his in-laws (Joseph and
Carolyn Crescio) on the ground that they had connived through

---

[1]After filing of the complaint, Shawmut Bank, N.A., merged with Fleet
National Bank of Massachusetts, which was the surviving corporation.

[2]Joseph Crescio and Carolyn M. Crescio.

fraudulent conveyances (G. L. c. 109A) to deplete Merriam of assets against which Shawmut might levy execution. The fraudulent conveyances case was heard by a judge of the Superior Court without a jury, at which the focus of attention was the marital residence in Danvers. The judge found that those premises had, indeed, been conveyed with the intent to hinder, delay, or defraud (G. L. c. 109A, § 7) Merriam's creditors, which included Shawmut. The judge ordered the entry of a judgment awarding the net proceeds of the sale of the residence to Shawmut, together with $30,000 in counsel fees and $10,251.76 in costs. Both parties appealed from that judgment. Although counsel in their briefs on appeal have presented a total of more than ten issues, we think the two that need to be answered are *first*, whether, in view of Richard Merriam's bankruptcy, a State court had jurisdiction over the fraudulent conveyance action, and *second*, whether Judith Merriam and the Crescios are individually liable for the judgment or whether recovery shall be limited to the yield from the net proceeds of the sale of the Danvers property.

It would serve no purpose to recount the convoluted efforts made by Merriam, his wife, and his in-laws to place the residence beyond the reach of creditors. There was ample evidence to support the findings of the trial judge that they had done so. We do not disturb those findings. See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996); *First Pa. Mort. Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 621-622 (1985). Title to the property, when this action began, had come to roost in Joseph and Carolyn Crescio. Title had been in Judith Merriam along the way. In an order that was incorporated in the final judgment, the court named a receiver who would sell the property and hold the proceeds for the benefit of the bank, subject to some credits we will advert to at the end of this opinion. The Crescios were ordered to convey the property to the receiver. So far as appears from the record, the property has not been sold.

1. *Jurisdiction in light of Merriam's bankruptcy.* One year after the bank commenced the current action, Richard Merriam filed a suggestion of bankruptcy. Merriam was adjudicated a bankrupt under c. 7 of the Bankruptcy Code, 11 U.S.C. §§ 701 et seq. (1994), and on April 12, 1993, was released from all dischargeable debts. The defendants urgently contend that the automatic stay provision of the Bankruptcy Code, 11 U.S.C.

§ 362 (1994), deprived the Superior Court of jurisdiction to consider the action against Judith Merriam and the Crescios, as well as Richard Merriam. He was originally a party to this action but was ultimately dismissed from it. The automatic stay protects primarily the debtor, and the defendants' position is that, if the Danvers property was fraudulently conveyed, then it should be treated as part of the bankrupt estate. See *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983); *Matter of Sherk*, 918 F.2d 1170, 1175-1176 (5th Cir. 1990).

The trustee in bankruptcy could have pursued the Danvers property as an asset of the bankrupt estate, but she did not do so. Indeed, before the judge made his findings and rulings on July 23, 1993, the bankruptcy proceeding had been closed, without any claim regarding the Danvers property. The trial judge took the precaution of bringing the trustee in bankruptcy before him so that the judge could inquire whether the trustee was asserting any claim to the Danvers property. The property had not been listed as an asset of the estate by the trustee. She reported to the judge that she had been aware of the property, and the encumbrances upon it, and had consciously elected not to pursue a fraudulent conveyance claim concerning it on the ground that the cost of pursuit would exceed the potential recovery. As the trustee had not only abandoned her claim but also could not at that point revive it, see 11 U.S.C. § 546(a) (1994) (trustee must make claim to an asset within two years of appointment or close of the bankruptcy case, whichever is earlier), the State court action could not have possibly affected the bankruptcy creditors and the State court action could proceed. *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). *Matter of Kubly*, 818 F.2d 643, 645 (7th Cir. 1987). *Citizens Bank* v. *Callahan*, 38 Mass. App. Ct. 702, 704-705 (1995).

2. *Individual liability of the transferees.* Shawmut's action sought, as cumulative remedies, reconveyance of the property, so that it might be sold for the account of the bank, see G. L. c. 109A, § 9, and recovery against the individual estates of the parties to the fraudulent conveyance, namely the defendants Judith Merriam and the Crescios. The position of the defendants is that recovery is limited to setting aside the fraudulent conveyance, but that is not correct.

In *Northborough Natl. Bank* v. *Risley*, 384 Mass. 348, 350-351 (1981), a case that much resembles on its facts the one

before us, the court held that the transferee was not liable because he returned the net proceeds of the sale of the fraudulently conveyed asset to the debtor and because his knowledge was minimal, and he sought and received no benefit from the transaction. *Id.* at 351. Here, neither the assets nor the proceeds were returned, and the trial judge found that the defendants were conscious participants in hiding the Danvers property from Richard Merriam's creditors so as to hinder, delay, or defraud them. In those circumstances, the creditor can recover from the transferees of fraudulently conveyed property to the extent the liquidation proceeds of the fraudulently conveyed assets do not satisfy the second judgment in the fraudulent conveyances action. *Damazo* v. *Wahby*, 269 Md. 252, 256-257 (1973). In the *Damazo* decision, the court observed that the Uniform Fraudulent Conveyances Act added remedies and did not restrict remedies already available to a creditor. Specifically, "[t]he form of the relief should be so framed as 'to place the judgment creditor in the same or similar position he held with respect to the fraudulent transferor prior to the fraudulent conveyance,' *Miller* v. *Kaiser*, 164 Colo. 206, 433 P.2d 772, 775 [1967]." *Ibid.* See *Flowers & Sons Dev. Corp.* v. *Municipal Ct.*, 86 Cal. App. 3d 818, 825 (1978) (transferee liability when property no longer available); *Deyong Mgmt., Ltd.* v. *Previs*, 47 Wash. App. 341, 345-347 (1987); Clark, Recent Development, Tort Liability for Fraudulent Conveyances, 19 Stan. L. Rev. 636, 637-639, 641 (1967).[3]

The instant case illustrates the soundness of that principle. Richard Merriam and Judith Merriam owned the Danvers property as joint tenants. Had there been no fraudulent conveyance, Richard's half interest in the $60,000 equity in the Danvers property would have gone a long way to satisfy the original $37,591.85 judgment. By hiding the property through fraudulent conveyance, the defendants put the creditor to a merry chase and, because of legal expenses, an expensive one. The responsibility, and, therefore, the liability for an amount due on the judgment over liquidation proceeds is theirs. Contrast *David* v. *Zilah*, 325 Mass. 253, 256 (1950), and *Citizens Bank & Trust*

---

[3]General Laws c. 109A, § 12, as appearing in St. 1996, c. 157, provides "[t]his chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states which enact it." Consequently, out-of-State authorities have particular significance.

*Co.* v. *Rockingham Trailer Sales, Inc.*, 351 Mass. 457, 462 (1966), both of which were actions to reach and apply specified assets and did not include claims against the individual transferees.

The first recourse, of course, must be to the Danvers property, and it may be that a change in market values will provide sufficient value to pay the judgment out of Richard's half interest. We do not consider the arguments raised as to whether the defendants are entitled to a credit for $18,500 paid to discharge an attachment against the property. Because of what we have said about their individual liability, their contribution to equity in the property will not be material in terms of satisfying the judgment.

The judgment for the plaintiff is modified to provide that the plaintiff shall recover $30,000 (the value, at the time of Shawmut's original judgment, of Richard's interest in the property that was fraudulently conveyed), plus interest, plus legal fees of $30,000 and costs of $10,251.76. The judge acted within his authority in imposing the plaintiff's legal expenses on the defendants under the principle discussed in *Franchi* v. *Stella*, 42 Mass. App. Ct. 251, 259 (1997), and cases cited. The amount of the judgment shall be paid first out of the proceeds of the sale of the Danvers property. Any difference between the net proceeds of the sale and the judgment shall be paid by the defendants. Any amounts realized from that sale in excess of the judgments shall be paid over to the defendants. As both parties appealed from the judgment, neither is to have legal fees or costs attendant on the appeal.

*So ordered.*